NO. 3:09-CV-00595-B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

ELIZABETH PAYNE,
                              *Plaintiff*

VS.

FRIENDSHIP WEST BAPTIST CHURCH,
                              *Defendant*
_____

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

**RESPONSE TO PLAINTIFF'S REPLY TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**
_____

Respectfully submitted,

| | |
|---|---|
| Faith S. Johnson | John D. Nation |
| State Bar No. 18367550 | State Bar No. 14819700 |
| Law Offices of Faith Johnson | Wyde & Nation |
| 5201 N. O'Connor Blvd., Suite 500 | 3131 Turtle Creek, Suite 901 |
| Irving, Texas 75039 | Dallas, Texas 75219 |
| 972-401-3100 | 214-521-9100 |
| 972-401-3105 (facsimile) | 214-521-9130 (facsimile) |

Counsel for Defendant

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………………….. 3

Defendant's Reply ……………………………………………………………………….5

    A.   The True Nature of Plaintiff's Response:………………………………………… 5

    B.   The Standard of Review…………………………………………………………... 6

Conclusion…………………………………………………………………………... 10

Certificate of Service………... …………………………………………………………..11

## TABLE OF AUTHORITIES

**Cases**

*Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) ..........................................7

*Lee v. Kansas City Southern Railway Co.*, 574 F.3d 253, 259 (5th Cir. 2009).....................5, 8

*Okoye v. Univ. of Tex. Houston Health Sci.*, 245 F.3d 507, 514 (5th Cir. 2001) .......................7

*Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004) ............................8

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) ........................................8

**Rules**

Local Rule 7.1 (f), ......................................................................................................................4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELIZABETH PAYNE | § | |
| | § | |
| VS. | § | NO. 3:09-CV-00595-B |
| | § | |
| FRIENDSHIP WEST BAPTIST CHURCH | § | |
| | § | |

### DEFENDANT FRIENDSHIP WEST BAPTIST CHURCH'S REPLY TO PLAINTIFF ELIZABETH PAYNE'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, FRIENDSHIP WEST BAPTIST CHURCH, Defendant in the above-referenced cause and files the following reply to Plaintiff's response to Defendant's Motion for Summary Judgment, pursuant to Local Rule 7.1 (f), and would show the Court as follows:

1.

This is a Title VII case where Plaintiff alleges that she, the lone Hispanic employed in a staff position at Friendship West, was terminated because she had engaged in a sexually-oriented email relationship with the Rev. Jeremiah Wright, a nationally-known pastor and mentor to Rev. Freddie Haynes, Senior Pastor of Friendship West. This was a discriminatory act, she complains, because other members of the staff were allegedly engaged in sexual misconduct and were not terminated as she was. Their misconduct, she alleges, was not punished because the others were engaged in "same race" relationships, yet she was punished because her relationship was interracial.

Defendant filed a motion for summary judgment, contending that Plaintiff could not prove a prima facie case of discrimination because she could not produce a comparator who

was similarly situated to her, both in the nature of her employment and the nature of the infraction that caused her termination.

In response, Plaintiff contends that she does not have to prove disparate treatment in order to establish a prima facie case. Alternatively, she argues that she has produced a sufficient comparator.

2.

Defendant's Reply

A.   The True Nature of Plaintiff's Response:

Plaintiff spends a great deal of time discussing the facts, as gleaned from the various depositions, that she intends to adduce at trial to prove that any non-discriminatory explanation for her dismissal must be pretextual. None of this is relevant to the issue before the Court on summary judgment—whether Plaintiff has even made a prima facie case, and none of it raises a fact issue sufficient to defeat summary judgment. Questions of the legitimacy of Defendant's reason for termination and pretext do not arise unless and until Plaintiff proves a prima facie case of discrimination. *Lee v. Kansas City Southern Railway*, 574 F.3d 253, 259 (5th Cir. 2009).

Moreover, Plaintiff's attempt to show the existence of a material fact issue relates chiefly to whether Defendant's reasons for terminating her (set forth in deposition testimony but not otherwise involved in summary judgment) are pretextual. Whether or not she demonstrates a material fact issue on pretext is irrelevant if she cannot establish a prima facie case of employment discrimination. Plaintiff has not proved a material fact issue on the critical element of her prima facie case, more favorable treatment to a similarly-situated employee under nearly identical circumstances.

B. <u>The Standard of Review</u>:

Plaintiff argues that disparate treatment is only one way to prove employment discrimination. While this is true, to an extent, this argument does not benefit her. For example, in *Abdu-Brisson v. Delta Airlines*, 239 F.3d 456, 467 (2d Cir. 2001), the Court held:

> In the run of the mill discrimination cases, this may/must controversy is of little consequence because a plaintiff can make a showing of disparate treatment simply by pointing to the adverse employment action and the many employees who suffered no such fate. This is not in any way surprising, **for disparate treatment is the essence of discrimination**. However, cases occasionally arise where a plaintiff cannot show disparate treatment only because there are no employees similarly situated to the plaintiff. A simple example of such a case is where an employer has only one employee. If that employee were fired for a discriminatory reason, and no one was hired to replace him, he could never demonstrate disparate treatment because there is no point of comparison. Bearing in mind the flexible spirit of a plaintiff's *prima facie* requirement, [citation omitted], it stands to reason that, in such a case, the plaintiff should be able to create an inference of discrimination by some other means.

239 F.3d at 467.[1] (emphasis added).

Plaintiff, however, is not "in a class by herself." As she concedes in her response and brief, there were other administrative assistants. <u>Plaintiff's Response to Motion for Summary Judgment</u> at 17 ("The church takes the position that there was no similarly situated employee with which to compare treatment. However, the church completely fails to mention Charlotte Rhone, the administrative assistant to Danielle Ayers"); <u>Plaintiff's Brief in Response to Motion for Summary Judgment</u> at 8 ("each pastor had an administrative assistant who performed essentially the same job functions"). She also offers a comparator, Charlotte Rhone, an administrative assistant to another pastor. <u>Response to</u>

---

[1] *Abdu-Brisson* was recently cited by this Court in *Green v. Certified Payment Processing*, No. 3:08-CV-2263-B (N.D. Tex. March 4, 2010).

<u>Motion for Summary Judgment</u> at 17 ("The job that Ms. Payne had was identical to the job that Ms. Rhone had.").

Plaintiff's complaint is clearly founded on disparate treatment. In Paragraph 14, she alleges that, shortly after she was thought to be in a relationship with an African-American male, her employment was terminated. She further notes that there were other employees who had "similar relationships" but were not terminated because they were in "same race" relationships.

Disparate treatment continues to be a theme in Plaintiff's response and brief, although now she complains of the manner of her termination rather than disparate treatment over her interracial relationship. In her response and brief she contends that other employees were subjected to progressive discipline while she was terminated outright. <u>Response to Motion for Summary Judgment</u> at 16-17.

Plaintiff has hitched her wagon to disparate treatment and it is under that standard that her prima facie showing must be judged. To establish a prima facie case of racial discrimination in employment, the employee must demonstrate that she (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was the subject of an adverse employment action and (4) was treated less favorably because of her membership in that protected class than were other similarly-situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City Southern Railway Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005). Only if Plaintiff establishes the fourth element will the burden shift to Defendant to articulate a non-discriminatory reason for the termination. *Lee v. Kansas City Southern Railway*, 574 F.3d at 259.

The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person and have essentially comparable violation histories. *Id.* at 260; *Okoye v. Univ. of Tex. Houston Health Sci.*, 245 F.3d 507, 514 (5th Cir. 2001). Critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004). If the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts* for the difference in treatment received from the employer, the employees are not similarly situated for purposes of an employment discrimination analysis. *Lee v. Kansas City Southern Railway*, 574 F.3d at 260; *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001).

Plaintiff's response to Defendant's motion for summary judgment focuses on the lack of progressive discipline in her job performance issues and her comparators are cast in this light. This is not, however, what Plaintiff pled in her complaint and the time has passed (September 28, 2009) for her to amend her pleadings. Plaintiff's pleaded theory of racial discrimination was her interracial relationship with Rev. Jeremiah Wright and there she must make her prima facie showing.[2]

In her complaint and deposition testimony, Plaintiff contended that other employees engaged in sexual relationships outside of marriage, but were not disciplined because the

---

[2] Plaintiff spends the majority of her response in arguing that Defendant's reason for terminating her was pretextual. Pretext, however, is not reached unless she makes the prima facie showing of discrimination. The presence of a fact issue on pretext will not defeat a motion for summary judgment if Plaintiff fails to make a prima facie showing. The change of focus of her response and brief may well be an implied concession that Plaintiff cannot make the required showing of discrimination on her interracial relationship theory.

parties were of the same race, whereas she was terminated because her relationship with Rev. Jeremiah Wright was interracial, and thus frowned upon by the church staff. Defendant pointed out in its motion for summary judgment and brief that, even assuming her theory of termination (which Defendant did not concede) was correct, Plaintiff's relationship was quite different—she was "sexting" during work hours, on church property, using church equipment, with a nationally-known and controversial figure. The difference between her conduct, and that of her comparators, accounts for the difference in treatment by the church and therefore she and her alleged comparators were not similarly situated for employment discrimination purposes.

Plaintiff identifies one comparator, Charlotte Rhone, another administrative assistant. Assuming, only for purposes of argument, that Rhone had nearly identical job duties, she is not a similarly-situated employee. Plaintiff argues that Rhone was subjected to progressive discipline before her ultimate termination. But Rhone was not fired for sexual misconduct—she was terminated for performance issues. *See* Plaintiff's Response at 17 ("With Ms. Rhone, the church followed its progressive discipline policy and Ms. Rhone received a verbal warning, then a written warning, then a final written warning before being terminated, all for performance issues.").

Under the only theory pled by Plaintiff in her original complaint, she was improperly terminated for sexual misconduct. Her argument for discriminatory intent is indeed unusual: despite the flagrant nature of her sexual misconduct, she would not have been fired if she had stayed within her race and the church should have treated sexual misconduct as it would have treated a habitually-late arriving employee—by progressive sanctions.[3]

---

[3] If sexting with a nationally-known public figure rates only a warning, what must an employee do to deserve termination?

It should also be noted that Plaintiff's argument on disparate treatment rests almost entirely on rank hearsay. She has yet to produce affidavits of any other church staffers admitting to sexual misconduct. Nor has she proved that Rev. Haynes knew of the other employees' sexual misconduct, but disregarded it in deciding to terminate Plaintiff. To prove disparate treatment, she is going to have to do more than accuse, without more, other church staffers of committing unpunished sexual misconduct.

Realistically, Plaintiff is urging a distorted view of proper employee discipline upon the Court. One can only wonder what ridicule and opprobrium the church would have suffered had Plaintiff's relationship with Rev. Wright come to light during his turn on the national stage. Plaintiff simply ignores the great and qualitative difference between performance issues and sexual misconduct. The sexual misconduct to which Plaintiff has admitted deserves something more than a warning.

3.

Conclusion

It should be noted that Plaintiff expends very little effort in her response and brief to defeating summary judgment by establishing a material fact issue on the grounds pled in her complaint, termination by sexual misconduct. Instead, she spends almost all of her time attempting to prove that the reason Defendant gave for her termination was pretextual. This effort is in vain, because pretext does not become an issue until Plaintiff has proved a prima facie case under the theory pled in her complaint. It is far too late for Plaintiff to change her whole theory of the case. Because she has failed to establish a material fact issue on the theory upon which she sued Defendant, summary judgment should be granted against her.

           Respectfully submitted,

/s/ *Faith S. Johnson*
Faith S. Johnson
State Bar No. 18367550
Law Offices of Faith Johnson
5201 N. O'Connor Blvd., Suite 500
Irving, Texas 75039
972-401-3100
972-401-3105 (facsimile)


/s/ *John D. Nation*
John D. Nation
State Bar No. 14819700
Wyde & Nation
3131 Turtle Creek, Suite 901
Dallas, Texas 75219
214-521-9100
214-521-9130 (facsimile)

Counsel for Defendant

## CERTIFICATE OF SERVICE

This is to certify that I have served a true copy of this reply on Susan E. Hutchinson, Foreman, Lewis & Hutchinson, 611 Main Street, Suite 700, Grapevine, Texas 76051, via the ECF system on this _____ day of March, 2010.

/s/ *John D. Nation*
John D. Nation